IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:04-CR-0301** |
| v. : | (Judge Conner) |
| **ARTHUR GARCIA** : | |

## MEMORANDUM

Presently before the court are pre-trial motions in which the defendant, Arthur Garcia, challenges the constitutionality of the criminal statute under which he is charged, prohibiting the use of "any . . . means of interstate . . . commerce . . . [to] persuade[] . . . any individual who has not attained the age of 18 years[] to engage in . . . any sexual activity," and seeks to suppress evidence obtained by state police during an investigation into the alleged statutory sexual assault underlying the charge. The motions will be denied.

I.  **Findings of Fact**[1]

The criminal investigation started as a missing child report. The parents of the victim called the Pennsylvania State Police on Saturday, January 31, 2004, at 2:26 a.m., to report that their fourteen-year-old daughter had not returned home. School officials had reported to the parents that an unknown male individual, posing as the victim's father, had notified them that the victim was sick and would be absent from classes on Friday. One of the girl's friends had said that the victim

---

[1] These findings are based on testimonial and documentary evidence presented at the hearing on the pre-trial motions. See United States v. Pelullo, 173 F.3d 131, 135-38 (3d Cir. 1999); see also Ornelas v. United States, 517 U.S. 690, 695-98 (1996).

was communicating regularly over the internet with a male individual from California, known only as "Joel." This individual, described as older—approximately fifty years of age—with dark gray hair and a moustache, had given the victim a cellular phone and had recently traveled to Pennsylvania to meet her. The only apparent clue to the victim's current whereabouts was a slip of paper, found near her computer, on which "Jose Hernandez," "Room 213" and a phone number were written. (Doc. 53 at 10-13).

Investigating officers quickly traced the phone number to a local hotel, and obtained the number for the cellular phone given to the victim by "Joel." Police learned that the phone was activated by and registered to one Arthur Garcia, a resident of California. Call records indicated that the phone had been used to contact the victim's home, the school that the victim attended, and another phone registered to Mr. Garcia. Officers obtained from California motor vehicle authorities a photograph of Mr. Garcia, who was revealed to be a fifty-five-year-old male with dark gray hair and a mustache. (Doc. 53 at 13-18).

Soon after 2:00 p.m. on Saturday, as the investigation was continuing, police were notified that the victim had recently been dropped off at her friend's home. Trooper Thomas Grothey proceeded to the home and spoke to the victim. She said that "Joel," an older male in his forties or fifties whom she had met over the internet, had recently flown into the area from California and picked her up at her school bus stop on the previous day. They had gone to a local hotel, where they had engaged in sexual intercourse. She confirmed that the person in the California

2

motor vehicle photograph—whom Trooper Grothey knew to be Mr. Garcia—was "Joel." She also indicated that "Joel" would flying back to California on that day. (Doc. 53 at 19-23).

Trooper Grothey immediately contacted the police barracks and requested that Mr. Garcia be arrested on suspicion of statutory sexual assault. He informed officials that Mr. Garcia would likely be returning a rental car at the airport and would be flying out of state. Mr. Garcia was arrested by state troopers soon thereafter and charged with statutory sexual assault.[2] (Doc. 53 at 23-26).

After the arrest was made, Trooper Grothey sought a number of warrants to search the contents of computers and telephones found on Mr. Garcia's person. He presented warrant applications to a local district justice, who had been advised of the nature of the investigation. The applications noted that Mr. Garcia was being charged with statutory sexual assault and, referring to him as "the defendant," described the incident as follows:

> The victim met the defendant through instant messages and emails. They spoke for approx. 3-4 months on the computer. The defendant advised the victim he will be flying into the area to visit with her during instant messaging and emails. The defendant expressed interest in having sexual intercourse with the victim.
>
> On 01/30/04 at 0800 hrs. [t]he defendant picked the victim up at the bus stop. He transported her to [a local hotel]. The victim stayed there with the defendant until he dropped her off at a girlfriend[']s house on 01/31/04 at 1400 hrs.

---

[2] The timeline of events presented in this discussion is based substantially on the testimony of Trooper Grothey, which the court credits.

3

> The defendant had sexual intercourse with the victim at the [local hotel]. . . .
>
> The defendant was advised of the victim's age of 14 yoa. The victim advised she told him she was only 14 yoa.

(Doc. 55, Exs. 1-1k). None of the applications expressly state Mr. Garcia's age, and several of them include the incorrect date in the "date of violation" block. However, all of the applications include the same description of the incident and indicate that Mr. Garcia is being charged with statutory sexual assault. The warrants were approved and executed soon thereafter. (Doc. 53 at 27-31).

The case *sub judice* was commenced in September 2004 by indictment charging Mr. Garcia with violating 18 U.S.C. § 2422(b), which prohibits the use of "any . . . means of interstate . . . commerce . . . [to] persuade[] . . . any individual who has not attained the age of 18 years[] to engage in . . . any sexual activity," and 18 U.S.C. § 2423(b), which prohibits "travel[ing] in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person." (Doc. 1). Defense counsel filed pre-trial motions in November 2004 and, with leave of court, in March 2005. (Docs. 28, 51; see also Doc. 53 at 4-7). A hearing on the motions was held on March 10, 2005.[3] (Doc. 53).

---

[3] Resolution of the motions was delayed at the request of defense counsel, who sought and was granted additional time in which to investigate the incident at issue. (Docs. 75-77).

4

## II. Discussion

The pre-trial motions present three distinct challenges to the instant prosecution. One motion seeks dismissal of the first count of the indictment on the ground that 18 U.S.C. § 2422(b) is an unconstitutional exercise of the congressional power to regulate commerce.[4] (Doc. 28 at 1-2). Another demands suppression of evidence obtained after Mr. Garcia's arrest on the ground that the arrest was effected without probable cause. (Doc. 28 at 2-3). The third seeks suppression of the same evidence on the ground that the search warrants were issued without probable cause. (Doc. 51). As these motions implicate discrete legal and factual issues, they will be addressed separately.

### A. Motion To Dismiss: Constitutionality of 18 U.S.C. § 2422(b)

The Commerce Clause of Article I of the Constitution confers on Congress the authority "[t]o regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3. Encompassed within this grant is the power to regulate "three broad categories of activities": (1) "the use of the channels" of interstate commerce, (2) "the instrumentalities of," or "persons or things in," interstate commerce, and (3) "activities that substantially affect" interstate commerce. United States v. Lopez, 514 U.S. 549, 558-59 (1995). "Interstate commerce," for these purposes,

---

[4] Somewhat surprisingly, defense counsel does not argue that the other statute under which Mr. Garcia is charged, 18 U.S.C. § 2423(b), which criminalizes travel for the purpose of illicit sexual relations, is also unconstitutional. Of course, the same reasoning that defeats the defendant's actual claim would also defeat this hypothetical claim. See, e.g., United States v. Han, 230 F.3d 560 (2d Cir. 2000).

5

includes not only traditional "economic" transactions but also encompasses the "transportation of persons and property" across state boundaries for "non-economic" purposes. See Hoke v. United States, 227 U.S. 308, 320 (1913), quoted in Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 255-56 (1964).

The statute at issue, 18 U.S.C. § 2422(b), is plainly a constitutional exercise of the commerce power. Section 2422(b) provides, in pertinent part, as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, [is guilty of a criminal offense.]

Id. The statute targets conduct involving the "the use of the channels" of interstate commerce: interstate phone and internet communications. See United States v. Hornaday, 392 F.3d 1306, 1310-11 (11th Cir. 2004); see also Weiss v. United States, 308 U.S. 321, 325-28 (1939); Cooney v. Mountain States Tel. & Tel. Co., 294 U.S. 384, 391 (1935). That Congress may regulate activities within this field is clear, and the constitutionality of § 2422(b) cannot reasonably be doubted. See, e.g., Hornaday, 392 F.3d at 1310-11.

In arguing that the criminal offense targeted by the statute (i.e., sexual exploitation of minors) has no "substantial effect" on interstate commerce, defendant misapprehends the constitutional basis for the statute. The statute is premised not on congressional authority to regulate "activities that substantially affect" interstate commerce, but on its power to regulate "the use of the channels"

6

of interstate commerce. See id. While the former category generally requires some proof of interstate economic impact, see, e.g., Gonzales v. Raich, 125 S. Ct. 2195, 2206-07 (2005) (citing Lopez, 514 U.S. 549; Wickard v. Filburn, 317 U.S. 111 (1942)), the latter does not, see, e.g., Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 255-56 (1964). Congress enjoys plenary authority under the Commerce Clause to determine the permissible means by which, and the purposes for which, the channels of interstate commerce may be utilized.[5] Id. Section 2422(b) is a valid exercise of the commerce power.

### B. Motion To Suppress: Warrantless Seizure Without Probable Cause

A warrantless seizure is valid if police have "probable cause" to believe that the suspect has committed a crime. E.g., Atwater v. City of Lago Vista, 532 U.S. 318, 340-45 (2001). The existence of probable cause must be judged from the perspective of an objective observer in the officer's position at the time of the seizure. See Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004); see also Wright v. City of Philadelphia, 409 F.3d 595, 602-03 (3d Cir. 2005). "The dispositive question is whether the investigating officer, with his or her experience and based on the facts then known, could have reasonably concluded that the [person to be seized] more likely than not [had committed] a crime." United States v. Wogan, 356 F. Supp. 2d 462, 467 (M.D. Pa. 2005) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).

---

[5] Subject, as always, to other constitutional limitations. See, e.g., Lopez, 514 U.S. at 558-59.

Probable cause supported the seizure in this case. Section 3122.1 of Title 18 of the Pennsylvania Consolidated Statutes provides that a person commits statutory sexual assault "when [he or she] engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 PA. CONS. STAT. § 3122.1.[6] At the time of the seizure, police had been informed by the victim, a fourteen-year-old girl, that she had engaged in sexual relations with a fifty-five-year-old male to whom she was not married. This information, corroborated by other sources, undoubtably provided adequate grounds to suspect that defendant was guilty of a criminal offense.[7] See id.; see also Commonwealth v. Duffy, 832 A.2d 1132, 1138-41 (Pa. Super. Ct. 2003). The seizure was constitutional.

### C. Motion To Suppress: Search Warrant Issued Without Probable Cause

A search warrant may issue only upon "probable cause" to believe that evidence of a crime will be found in the areas to be searched. U.S. CONST. amend. IV. A warrant issued on less than probable cause is invalid and a search of an individual's effects conducted pursuant thereto violates his or her rights under the

---

[6] See also Christopher v. Nestlerode, 373 F. Supp. 2d 503, 515 (M.D. Pa. 2005) ("[T]he existence of [probable cause] that a person has committed a crime depends on the elements of the crime under state law.") (citing Johnson v. Campbell, 332 F.3d 199, 205-14 (3d Cir. 2003)).

[7] Indeed, it may be noted that "[t]he defense does not dispute the presence of probable cause in this case, if Trooper Grothey's testimony is accurate" (Doc. 68 at 11). Cf. supra note 2 (indicating that court credits Trooper Grothey's testimony).

8

Fourth Amendment to the Constitution. See, e.g., United States v. Leon, 468 U.S. 897, 915-16 (1984).

Despite the omission of defendant's age, the warrant applications in this case provided sufficient information to permit the district justice to conclude that, more likely than not, the crime of statutory sexual assault had been committed. Initially, it cannot reasonably be argued that a warrant application based on suspicion of statutory sexual assault *must* include the defendant's precise age. An application asserting that a man with gray hair (as defendant has) engaged in sexual relations with a fourteen-year-old girl (as the victim was) would undoubtably suffice to establish probable cause to believe that the man had committed statutory sexual assault. See 18 PA. CONS. STAT. § 3122.1. The affidavit need provide only enough information to permit a "reasonable inference" that the defendant was four years older than the victim. See, e.g., Ornelas v. United States, 517 U.S. 690, 695-98 (1996).

The applications *sub judice* satisfy this burden. The applications state that the defendant communicated with the victim, a fourteen-year-old female, through the internet over the course of several months to induce her to engage in sexual relations. They assert that he made plans to "fly" to the area in December 2003. He did so, and "picked the victim up" at approximately 8:00 a.m. from a bus stop. He transported her to a hotel and, in a rented room, engaged in sexual relations with her.

All of these facts imply that the defendant was at least eighteen years of age. Minors do not often schedule air flights to rendevous with out-of-state girlfriends.

Minors are not usually allowed to book hotel rooms on their own. Minors are not often permitted to rent cars. The district justice could reasonably infer from the facts in the applications that the defendant was over eighteen years of age. With the allegations of sexual contact with the fourteen-year-old victim, the applications establish probable cause to believe that he had committed statutory sexual assault.[8] See 18 PA. CONS. STAT. § 3122.1.

Moreover, even if these facts were deemed insufficient to establish probable cause, suppression of the evidence obtained on the basis of the warrants would not be justified in this case. Evidence obtained in violation of the Fourth Amendment is properly excluded only when necessary to deter police from committing future constitutional violations. See Leon, 468 U.S. at 905-06; see also Arizona v. Evans, 514 U.S. 1, 10-16 (1995). However, issuance of a warrant without adequate cause generally represents a mistake of the *judicial officer*, not the *police*, and suppression of evidence obtained in reliance on the warrant is normally inappropriate. See id. Only if the error is somehow attributable to police—either because they misrepresented facts to the judicial officer or because the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely

---

[8] Defense counsel does not assert that the applications fail to disclose that the defendant and the victim were not married, see 18 PA. CONS. STAT. § 3122.1; even if such an argument was advanced, the reasoning presented above supports the conclusion that the district justice could reasonably infer this fact from the applications. See Ornelas, 517 U.S. at 695-98.

10

unreasonable"—should the exclusionary rule be invoked. See id.; United States v. Williams, 3 F.3d 69, 73-74 (3d Cir. 1993).

It cannot be said that the officers in this case intentionally misrepresented facts to the judicial officer or that the warrants were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." See id. The applications present a factually accurate description of the preceding investigation. The sole material omission, of the defendant's age, was a product of inadvertence and, as discussed above, does not preclude a finding of probable cause. Officers were entitled in this circumstance to rely on the judicial determination of probable cause in executing the warrant. Any mistake in issuing the warrant is attributable to the district justice—not to police—and the exclusionary rule should not be applied in this case.[9] See id.

### III. Conclusion

The issues raised in the pre-trial motions lack merit. The statute under which the defendant is charged is a valid exercise of the commerce power. The warrantless arrest of the defendant was supported by probable cause. The warrants to search his effects contained sufficient indicia of probable cause. The motions will be denied.

---

[9] Defense counsel also raises various procedural errors in the warrants and inventory returns. Regardless of the merit of these alleged procedural violations, the defendant has not demonstrated the requisite causal prejudice as to justify suppression of the evidence obtained thereby. See, e.g., United States v. Hall, 505 F.2d 961, 963-64 (3d Cir. 1974).

An appropriate order will issue.

                                                  S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge

Dated:      August 5, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:04-CR-0301** |
| v. : | (Judge Conner) |
| **ARTHUR GARCIA** : | |

## ORDER

AND NOW, this 5th day of August, 2005, upon consideration of defendant's pre-trial motions (Doc. 28, 51), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motions (Doc. 28, 51) are DENIED.

                                                  S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge