IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

UNITED STATES OF AMERICA,   : CASE NO.
                Plaintiff   : 1:04-CR-00301
        vs.                 :
ARTHUR GARCIA,              : Harrisburg, PA
        Defendant           : 7 September 2007
..........................: 1:30 p.m.


TRANSCRIPT OF RE-SENTENCING HEARING
BEFORE THE HONORABLE CHRISTOPHER C. CONNER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

    Martin C. Carlson, Esq., U.S. Attorney
    U.S. Attorney's Office
    Federal Building, 2nd Floor
    228 Walnut Street
    Harrisburg, PA 17108
    (717) 221-4482




For the Defendant:

    Gerald A. Lord, Esq.
    Miller, Poole & Lord, L.L.P.
    139 East Philadelphia Street
    York, PA 17403
    (717) 845-1524


Court Reporter:

    Wesley J. Armstrong, RMR
    Official Court Reporter
    U.S. Courthouse
    228 Walnut Street
    Harrisburg, PA 17108
    (717) 542-5569

**P R O C E E D I N G S**

THE COURT: Good afternoon.  Please be seated.

MR. CARLSON: Good afternoon, Your Honor.

THE COURT: Good afternoon, Mr. Carlson.

MR. CARLSON: This is time and place set for the resentencing in the case of United States of America versus Arthur Garcia.  It is this court's criminal number 1:CR-04-301.  This matter comes before the court for the purpose of resentencing following remand from the Court of Appeals.  Mr. Garcia is present in the courtroom represented by his counsel Mr. Lord.  The original prosecutor in this case, Mr. Clancy, is ill, and I am standing in for him for purposes of this proceeding.

THE COURT: Thank you, Mr. Carlson.  By way of background to today's proceeding, the defendant pled guilty in August 2005 to using a facility of interstate commerce, the internet, to knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity, for which a person can be charged with a criminal offense and did attempt to do so, in

violation of Title 18 of the United States Code,

Section 2422(b), and knowingly traveling in

interstate commerce for the purpose of engaging

in elicit sexual conduct with another person, in

violation of Title 18 of the United States Code,

section 2423(b).

A sentencing proceeding was held on January

25, 2006 in which the court addressed the

defendant's objections to the presentence

report. First, the court overruled the

defendant's contention that any facts relevant

to the sentencing enhancements must be proven by

clear and convincing evidence or beyond a

reasonable doubt.

Second, the court sustained the defendant's

objection to the cross reference from Section

2G1.1C2 to the criminal sexual abuse guideline

of Section 2A3.2 of the sentencing guidelines,

and instead I applied Section 2A3.2 of the

guidelines. By sustaining this objection,

defendant's objection to the two-level increase

based on the victim's age under Section 2A1.3B2B

became moot.

Third, the court overruled the defendant's

objection to the two-level enhancement for the

use of a computer under section 2A3.2B3.
Fourth, the court overruled the defendant's
objection to the two-level enhancement for
misrepresentation and undue influence under
2A3.2B2. Finally, the court rejected the
defendant's challenge to the authority of
Congress to require a mandatory minimum term of
imprisonment of five years under Title 18 of the
United States Code, Section 2422(b).

Based on these rulings, and an upward
departure, the court sentenced the defendant to
serve a term of imprisonment of 100 months, to
be followed by a five-year term of supervised
release, and to pay a fine of $1,200, fined an
assessment of $1,200, and restitution of $876.
Following an appeal by the defendant in April of
2007 the Court of Appeals for the Third Circuit
affirmed the court's decision to apply a
two-level enhancement for the use of a computer
under section 2A3.23B, but remanded for
sentencing because the court did not provide
notice to the defendant that it was
contemplating an upward departure.

I will say that while counsel may also
raise any other matters relevant to the

imposition of sentence at this proceeding, you
need not reargue points or reintroduce evidence
addressed during the original sentencing
proceedings. I have reviewed a transcript of
those proceedings carefully.  I have a copy at
the bench if we need to refer to it, and that
would include counsel's prior submissions, and
absent some well grounded objection I intend to
rely on those matters in resolving disputed
issues for purposes of resentencing, but
obviously I'm prepared to accept any new and
additional arguments you may have.

      The court has also reviewed the defendant's
resentencing memorandum and supplemental
memorandum.  Following counsels' presentations
and after the defendant has been given the right
of allocution the court will impose an
appropriate sentence based upon a *de novo* review
of the entire record and obviously taking into
consideration the Third Circuit case law that
has established the appropriate procedure for
sentencings post-<u>Booker</u>, specifically in
accordance with the recent Third Circuit
decisions in <u>United States vs. Gunter</u>, 462 F.3d
237, and <u>United States vs. Jackson</u>, 467 F.3d

834, the 2006 Third Circuit cases, I am required to engage in a three-step process.

First I will calculate the advisory guideline range in accordance with pre-Booker procedure. Second, I will formally rule on any motions for departure and state the impact, if any, of such rulings on the guideline calculation, and third I will exercise discretion and consider all of the factors set forth in Title 18 of the United States Code, Section 3553, in setting a sentence which may in fact vary from the guideline sentencing range.

In this case a presentence report was prepared by the probation office and distributed to the court and the parties during the prior sentencing proceedings in this case. Does either party wish to raise additional objections to the presentence report? And I'm not asking for any Section 3553(a) argument at this time. Mr. Carlson?

MR. CARLSON: No, Your Honor.

THE COURT: Mr. Lord?

MR. LORD: No, Your Honor.

THE COURT: Very well. After considering all of the matters that have been raised, that

were previously raised by the parties, and
considering that there are no additional matters
that have been raised at this proceeding, the
court reaffirms its prior rulings on the
objections to the presentence report for the
same reasons set forth on the record during the
original sentencing proceeding.

By sustaining defendant's objection to the
cross reference to the criminal sexual abuse
guideline under Section 2A3.1, the base offense
level is 24 under Section 2A3.2A1. The
enhancement for use of a computer under 2A3.2B3
increases this offense level by two levels.
A two-level enhancement also applies for
misrepresentation and undue influence under
2A3.2B2.

For the government's motion a three-level
reduction applies for acceptance of
responsibility, and with those findings and
exceptions the court adopts the findings of the
presentence report in their entirety except as
modified. The defendant's offense level is 25
and his criminal history category is 1.

The corresponding guideline range is 57 to
71 months, but the statutory minimum penalty is

60 months under Title 18 of the United States
Code, Section 2422(b) and Section 5G1.1 of the
guidelines.  Therefore the applicable range in
this case is 60 to 71 months.  The court will
now address any motions for downward departure,
and I also want to discuss the issue of an
upward departure, but are there any motions for
downward departure in this case, Mr. Lord?

MR. LORD: No, Your Honor.

THE COURT: Mr. Carlson?

MR. CARLSON: No, Your Honor.

THE COURT: Let me address the issue of an
upward departure from this guideline range.  At
the initial sentencing hearing the court
upwardly departed from this range under the
sentencing guidelines.  However, I did so
without the benefit of the Third Circuit
decisions that have come down since the <u>Booker</u>
decision was issued by the Supreme Court.

Specifically I issued this sentencing
without the benefit of the Third Circuit
decision in <u>United States vs. Vampire Nation</u>,
451 F.3d 189, a 2006 Third Circuit decision in
which the court distinguished between departures
under the guidelines and variances from the

guidelines.

　　After reviewing the transcript of the
sentencing proceeding, and I noted that there
was really some debate between Mr. Lord and
Mr. Clancy about exactly what the government was
requesting, it is now clear to me that the
government actually sought a variance from the
guideline range considering the factors set
forth in Section 3553, and therefore having
construed the government's request under the
prior proceeding as a request for a variance
under our current definitions provided by the
Third Circuit the court will not upwardly depart
under the sentencing guidelines in this case.

　　I also want to refer counsel to <u>United
States vs. Colon</u>, 474 F.3d 95, a 2007 Third
Circuit decision which states that a district
court need not rely on upward departures to
sentence a defendant above the recommended
guidelines range.  when imposing such a sentence
a district court need only state on the record
what factors it is considering.

　　I will consider all relevant factors and
all of the material submitted previously and all
of the materials submitted to date in connection

with this resentencing proceeding when arriving

at an appropriate sentence for this defendant.

Now, Mr. Lord, having that by way of background,

recognizing that the court will not upwardly

depart within the guidelines but is reserving

the right to consider a variance above the

guideline range, do you have anything you wish

to add to the arguments that you have made

previously or your written materials?

And I do, by the way, want to complement

you on the thoroughness of your research.

It's rare that I have seen that much case law

applicable to a particular defendant's situation

and I want to thank you for bringing those cases

to the attention of the court.  It was much

appreciated.

MR. LORD: Thank you, Your Honor.

THE COURT: Is there anything you would like

to add?

MR. LORD: Your Honor, I did have some

comments I was going to make.  In light of the

review of the court the only new things, or I

guess I could refer to them new, there's two

things that I was going to mention today that I

had not mentioned before, either orally or in

court.

One thing I noted and was struck by in preparing for today's proceeding is that the intention that Congress gave to this particular kind of criminal activity, I saw that back in 1998 when the guidelines manual came out if you were a defendant being sentenced under the same section of the guidelines as my client, you were dealing and looking at a base offense level of 15.

Now that base offense level is up to 24, just one level below voluntary manslaughter, and nine levels above aggravated assault. So it's clear in the years since 1998 until the time that my client committed his offense, which happened to be the year that Protect Act became effective, that Congress has taken this criminal activity into serious consideration and has through the sentencing commission reached a point where, you know, people who are committing this criminal activity are already facing a very lengthy sentence compared to what they were facing prior to the sentencing guidelines.

I don't -- I'm a defense attorney. My job in any particular case is to advocate the

position of my clients.  I was a prosecutor for four years, but that was a long time ago.  I don't have the type of vantage point that you, Your Honor, has and the U.S. attorney and the U.S. probation office, so I don't see the many cases that come through the courts and get the sense that Your Honor does about what kinds of sentences are reasonable in the particular cases.

I looked at the guidelines, I looked at what Congress did, I looked at the recent case law, and I looked at all the factors, both aggravating as the court found and mitigating in my client's case, and I tried to further an argument that the amount of time given all of the circumstances under the advisory guideline range and in light of the facts of particular cases where the defendants were sentenced in those ranges or below it, I came to the conclusion based on my experience that I would be fairly representing to the court that a guideline range sentence is a fair and reasonable sentence, and I take that position yet again today.

THE COURT: All right.  Thank you, Mr. Lord.

Mr. Garcia, it's my understanding that you're
unable to stand for any lengthy period of time
because of an injury, and I'm happy to
accommodate you.  So you need not stand at this
time.  Do you have -- you have a right of
allocution, which gives you an opportunity to
add to anything that you have previously
presented to the court or that your attorney has
previously presented.  You're not required to
say anything if you don't care to, but now would
be the appropriate time.  You have my attention.

THE DEFENDANT: I would, Your Honor.

THE COURT: If you could move the microphone
towards Mr. Garcia, that would be appreciated.

THE DEFENDANT: First thank you very much
for letting me sit here.  I had quite a long
period of time to think about the situation, and
the longer the time goes by I find it almost
unfathomable that I ever got involved in any
such activities, and obviously I'm very shameful
about it to say the least, and I just wanted to
say that it's had a great deal of impact and I
recognize that it is serious and I take it very
seriously also.

I appreciate having this opportunity to

come before the court and to let you know that those activities are just something that is dead and gone and away from me, and I see very clearly how egregious it was, and I regret it very much. It's had a great deal of impact not only to me but I realize that the families involved as well, and I only pray that they can forgive me one day and I pray also to, of course to my heavenly father in asking for forgiveness.

I have tried to, you know, lead a better life now in spite of being imprisoned and every day dedicated in prayer and try to be helpful to others and try to put this behind me. As I said, it has had a very severe and profound effect on me, and not only on me but on my family as well, all those that knew me, and I, at this point my family has struggled because of my continued imprisonment and, you know, my wife is out on the street, we lost our home, and I have a son, too, that is struggling out there, and I just want to ask for a reasonable sentence and that the court may show mercy towards me.

Help me to get back out on the street and be able to help my family and be able to pursue an upright life that I know I will do and will

promote, and I just feel very regretful and very sorry about the events and the activities that brought me to this point, and I just wanted to express that to the court and again leave it in your capable hands for a reasonable sentence. Thank you.

THE COURT: All right. Thank you, Mr. Garcia. Mr. Carlson?

MR. CARLSON: Yes, Your Honor?

THE COURT: What is the government's position?

MR. CARLSON: Your Honor, the government's position is that the hundred month sentence originally imposed in this matter was a fair and reasonable sentence under the extraordinary and aggravating circumstances of this case. Your Honor has aptly described the history of this matter and I think has noted aptly that the Court of Appeals opinion remanding this took great pains to remand it so that this defendant would receive every procedural opportunity to address this issue, and the court has given the defense months to do that and the defense has done an admirable job as the court has noted filing documents addressing the guideline

variance issues.

So the procedural requirements of that remand have been fully met here by these proceedings and by the great care and attention the court has given to this case. The Court of Appeals though in its remand made it clear that it was not voicing any view on the ultimate reasonableness of the sentence, instead referring us all to the Court of Appeals decision in <u>Colon</u>, which speaks to the fact that a sentence, an upward variance need not go through rigid ratcheting mathematics or some formulaic approach to an assessment of the sentence, but rather what the court must do, what the parties must do, is look to the touchstones standards of fairness set forth in 3553(a) of Title 18 and provide an explanation of how a varied sentence meets those touchstones standards, and that variation, if reasonable, would stand scrutiny on appeal and reflect a fair and just verdict and sentence of this court.

The government believes that when one looks at the facts of this case, facts that the court is intimately familiar with and facts that have

been thoroughly detailed in the record, that the
hundred month sentence in this case was fair,
was just, was reasonable when one measures that
sentence against the standards defined by
Section 3553(a), that statute sets four
touchstones for a fair, reasonable, and just
sentence.

The first touchstone is that the sentence
must reflect the seriousness of this crime, and
when one considers the seriousness of this crime
and the need to promote respect for the law and
to provide for just punishment, there are a host
of aggravating factors, a constellation of
factors in this case that make it one of the
more extreme and egregious violations of this
type and a violation that warrants about upward
variance.

For example, Your Honor, as the court knows
from having seen cases of this type in the past,
many of these cases involve sexual contact
between individuals who are acquaintances.  This
was a stranger statutory rape.  Mr. Garcia
reached out two thousand miles to select a
14-year-old girl as a victim in this case, and
this case is unusual and darkly disturbing in

the way in which Mr. Garcia cultivated and groomed his victim.

There is, the record is replete with an extraordinary amount of grooming of this victim. Mr. Garcia created deceit, lie upon lie as he groomed this 14-year-old child for sex. Mr. Garcia lied about who he was. Indeed his victim never knew his true name. Mr. Garcia lied about how old he was. He lied about what he did. Mr. Garcia as part of an elaborate grooming process created two alter egos in order to cultivate this child as an object of sex.

Mr. Garcia's activities are darkly disturbing in another respect. They are thoroughly documented in voluminous e-mails, and Mr. Garcia kept those e-mails, Your Honor. He kept those e-mails, something that I believe suggests the disturbing and disturbed nature of Mr. Garcia. He was a collector not only of children but he collected an elaborate grooming process and he kept it. It had meaning for him.

Moreover, Your Honor, Mr. Garcia we know from the e-mails was acutely aware of the wrongfulness of his conduct. He described how wrong his conduct is in the e-mails, and

Mr. Garcia engaged in elaborate preplanning for his violation of this 14-year-old girl.  As we note from the presentence report, he began taking sexual enhancement drugs a month before he arrived in Pennsylvania to violate this child.

Mr. Garcia's deceit involved not only unprecedented deceit targeting his victim, but deceit at his employer.  As the court may recall, Mr. Garcia told his employer that he was coming to Pennsylvania to tend to a sick uncle, and then Mr. Garcia when he arrived in Pennsylvania was here for a number of days providing his victim with gifts, with a cell phone so he could contact her, staking out the school and a residence.

Mr. Garcia also as I recall the facts, Your Honor, on the date that he violated this child called, impersonating a family member, to allay the school's concerns about her absence from school.  The elaborateness of this planning is something that is extreme and is extraordinary and underscores the seriousness of this offense and warrants the upward variance.

There are other aspects to the facts this

case that I think further enhance that
seriousness of the offense.  Mr. Garcia as at
times in the presentence report and in these
proceedings characterized this as an isolated
incident, but a review of the e-mails that he
collected as part of this practice revealed that
he was corresponding with contacting no less
than seventeen people who had identified
themselves as minors during the year preceding
the violation of this child here in
Pennsylvania.

Once Mr. Garcia had thoroughly groomed his
victim, Your Honor, he travelled two thousand
miles to consummate this act, two thousand miles
and at the expense of hundreds of dollars.
This, Your Honor, underscores another aspect of
this offense, an aspect whose seriousness must
be considered when examining an upward variance.
The strength of the sexual compulsion that drove
Mr. Garcia to groom these children for sex, to
engage in elaborate deceit in order to secure
sex, was such a powerful compulsion that he
would travel thousands of miles at the expense
of hundreds of dollars to engage in this
conduct.  I submit to you, Your Honor, when we

look at the first touchstone characteristic for a fair, just, and reasonable sentence under 3553(a), that is the seriousness of the offense, it is difficult to imagine a more serious offense.

The second touchstone characteristic that we are called upon by _Colon_ and by the statute to consider in this sentencing environment is the question of deterrence, and deterrence comes in two forms, specific and general, and, Your Honor, when you look at the nature of the dark compulsion that drove Mr. Garcia to do what he did, the fact that he corresponded with at least seventeen people who identified themselves as minors, and the extraordinary extent of the grooming engaged in by this defendant, it is clear that this was a crime fueled by an insatiable sexual compulsion and that for specific deterrence as to this defendant an upward variance is fully warranted.

Moreover, for the class of predator out there like Mr. Garcia who might be driven by these dark compulsions to commit criminal acts, in order to secure general deterrence of that class of offender we believe that an upward

variance such as the one that the court
fashioned carefully at the original sentencing
is fully appropriate.

The third touchstone standard, Your Honor,
under Section 3553(a) is the need to protect the
public from further crimes of the defendant, and
when one considers that touchstone factor and
when one considers the undisputed fact that
Mr. Garcia corresponded not only with the child
he victimized here but with sixteen other
individuals who had identified themselves as
minors, this is a case that cries out for an
upward variance for the purpose of protecting
the public and protecting the most vulnerable of
the public, the most innocent of the public,
children.

The final of the four touchstone factors
under 3553(a) that this court is obliged to
consider in fashioning a sentence that is
reasonable is the need to provide ongoing
supervision and care for this offender, and in
that regard, Your Honor, I've emphasized to the
court the government's view that this offender
is in desperate need of long-term supervision
because of what the evidence reveals about the

powerful compulsion that would drive him to crime and the extraordinary extent to which he will allow those compulsions to lead him to engage in behavior exploiting children.

Given what the record reflects about those factors the government believes that an upward variance in terms of incarceration is absolutely essential to provide this defendant with ongoing supervision and care and monitoring, because he is, appears to be a man who is slaved to desires that lead him to crime, and I would note that in the presentence report it appeared to me that when I looked at the paragraphs 56 through 58 which dealt with Mr. Garcia's mental health history, that he minimized the nature of these compulsions and their impact upon him, describing the treatment that he was receiving as episodic and situational because of the situational depression, and characterizing his encounter with the child he victimized here, a child who incidentally I understand also finds herself now in a homeless state, as isolated episodes.

Well, that just isn't correct. Mr. Garcia corresponded with other children, and I think

1    the record reflects that his problems are vastly

2    more profound and his denials are just that, a

3    statement of denial.  So recognizing the final

4    touchstone quality of a reasonable and just

5    sentence is the need to provide ongoing

6    supervision.  The government believes that

7    that touchstone characteristic of sentencing

8    supports an upward variance and supports one

9    other variance.

10        Congress has seen fit to authorize the

11    court in the case of sexual offenders, men

12    driven by sexual compulsion, to impose lifetime

13    terms of supervised release, and in this case,

14    Your Honor, regardless of what the court's

15    judgment is as to a period of incarceration, and

16    recognizing the broad discretion the court has

17    in framing a reasonable sentence on the area in

18    the field of incarceration, the government would

19    urge this court to impose a lifetime term of

20    supervised release on Mr. Garcia to provide him

21    with the care he needs for the rest of his life

22    to prevent future acts of sexual exploitation of

23    children, to protect the public, and to

24    underscore the seriousness of this offense and

25    to provide through supervised release a lifetime

Damiclean Sword of deterrence over this
defendant's head.

One of the beauties of our system of law,
Your Honor, is that the law changes as people
gain greater recognition and wisdom.  The
federal sentencing guidelines that Mr. Lord has
aptly noted has over time increased the penalty
for sexual offenders.  That increase in the
penalties that we have seen over time in the
guidelines and in legislation reflect the
growing awareness, the growing understanding,
and deepening appreciation of the fact that
sexual exploitation of children does untold
damage to our society, and that those who engage
in this exploitation engage in crimes like those
detailed by Mr. Garcia that are staggering in
their scope and their dimension and astonishing
in the inventiveness and the manipulative
quality of the crime.

As we have gained knowledge over time
Congress and the courts have recognized the need
for greater deterrence and greater punishment in
this vitally important field.  The court's
sentence which was imposed of a hundred months
in the spring of this year reflected that

assessment in the government's view.  It
reflected that sober and mature assessment of
this unique and uniquely disturbing consolation
of the facts in the defendant's case, and it
reflected a mature and sober assessment of the
touchstone qualities that define a reasonable
sentence.

The court has over the past months allowed
the defense the notice that he desired regarding
the penalties he could face and has provided him
with a chance to fully address those issues, but
at the end of the day, in the final analysis,
when these factors are taken into account the
government believes that on the merits of his
sentence the court's sentence of a hundred
months, an upward variance, was reasonable, was
fair, was just, was consistent with the statutes
as construed by the court, and the only other
thing that the United States would ask is that
the court reimpose that term of incarceration
and a lifetime term of supervised release.
Thank you.

THE COURT: Thank you, Mr. Carlson.
Mr. Lord, in light of the length of the
government's presentation I'll allow you some

additional time if there's anything else you would like to add.

MR. LORD: Thank you, Your Honor. Yes, I'd just like a few moments to respond to a couple of the things that attorney Carlson had mentioned on behalf of the United States government. He began his argument before the court here about the fact that my client repeatedly lied about his identity, never revealed his true name.

Although this wasn't -- well, let's put it this way. He started out this case charged under a portion of the guidelines that put him in a position to be facing a base offense level of 24, and then when the calculations were done, in an effort to determine where to place his case in the advisory guidelines he suffered a two-level upward enhancement because he misrepresented himself.

There was also mention made of the fact that he flew two thousand miles to consummate the relationship and that he started the relationship two thousand miles from where the victim lived. Obviously there was a computer used in this case, so the distance wasn't really

a factor, and I don't know that the fact that he
flew two thousand miles rather than five hundred
miles or drove or flew is really a matter that
aggravates this particular case, but the fact is
that he did come over to Pennsylvania and he did
engage in a sexual act and he is getting
penalized for it because the base offense level
is 24 rather than 21 because he did that.

There is mention being made about the fact
that he took a sexual enhancement drug.  I think
that evidence showed that my client purchased
the sexual enhancement drug before, a month
before he came over, and that one of the pills
was located when the police arrested him, but I
don't know that the government can make an
adequate argument that that's an aggravating
factor since by virtue of my client's age as
opposed to being a 25- or a 35-year-old if he's
going to engage in sex he may need the help of
such a drug to accomplish his goal, but the fact
that he's doing that in and of itself is not
aggravating.  It just simply shows that he
intended to have sex when he came over here.

Mr. Carlson touched upon my client's
compulsion to have sex, his conversations with

other teenagers on the internet, and the need for lifetime supervised release. I need not go into the details of this, but a thorough investigation was done in this case. My client's background shows that he came from a humble beginning, that he met his wife in 1970, that he started working for Hewlett Packard in 1979. He worked there for 25 years until he lost his job because of this case, and Hewlett Packard found seven other computers at his cubicle.

The government had an opportunity to review and investigate his life prior to this offense, and he's not charged with any other criminal activity in this case. He is not charged with taking multiple victims in this case. It is not against the law, it may not seem appropriate, but it's not against the law to chat on the internet with teenagers, and he's not charged with committing any sexual offenses against the Protect Act or any other act as a result of his conversations with both teenagers and adults that took place that were found when they confiscated his computer and found all those instant messages.

There was mention made about calling in the absence from school, grooming the victim for sex.  The court had an opportunity and so did the United States government to view the cases that have dealt with Protect Act violations before and after United States vs. Booker, and many of the elements that are present in Mr. Garcia's case have been present in those other cases as well, and the defendants ended up getting either guideline sentences or below guideline sentences.

I don't know that the government can today advise the court and argue to the court that my client needs a lifetime of supervised release and that he's, that he groomed this individual for sex.  The argument has been all along what actually did happen here. Obviously Mr. Garcia was a married man with four children.  Obviously he engaged in a relationship on the internet and then physically with a 14-year-old girl, and he did so over a period of four months, which based on my review of the case law seems like something that happens often in these types of cases, but he came over here and had sex with her but I don't know that that was highly

unusual.

It appears to be actually a very usual thing that happens, either an FBI agent or another government agent is planning to meet with a defendant, the point is the defendant is coming over there to have sex in some of these cases, they're not agents, they're actual victims, and the person does have sex, and they are penalized for it under the criminal statutes.

I go back to my point, Your Honor, that despite the spin that can be put on the case as to how aggravating it is it appears usual, and Mr. Garcia may need some help, but I believe the case law indicates that you don't put somebody in jail for a longer period of time or give them an upward departure if they need help. You order them to get help and order to continue after release from prison.

Mr. Garcia is going to be in his sixties no matter what sentence he walks out of here with today, Your Honor, and he made his life with the computer and it appears if he's even on five years of supervised release there may be some limitations on whether he can ever work with a

computer again, and maybe it will be found that
he shouldn't, but his life as he knows it and
has known it is gone.  His retirement money is
gone.  His ability to start a new living at his
age is basically gone.  He's going to have to
register as a sex offender anyway when he gets
out of jail.

He's -- and he spent fourteen months on
home detention prior to being sentenced in this
case, which is better than jail and it can't be
used to give him credit, but he didn't have the
ability to walk around the block with his wife
when he was sitting in his home for fourteen
months.  He didn't have the ability to work, and
he watched his wife go in and out the door every
day with the small amount of money she was
making, I think they said it was a thousand a
month, while he sat at home and did whatever he
could staying at home.

He was hooked up to an electronic bracelet.
His movements were severely curtailed, and again
I don't know -- I know that case law indicates
all the way back to 1995 when it was a case of
Janet Reno against the United States that you
don't get credit from the Bureau of Prisons for

pretrial release because they still consider it release, but I believe it's another factor that the court can consider in determining whether or not the sentence within the guidelines is a reasonable one. So we maintain that the range that Mr. Garcia is looking at as a result of his criminal violations is a reasonable one and there is no need to go above that.

THE COURT: All right. Thank you. Mr. Carlson, anything further.

MR. CARLSON: Your Honor, I've come to this matter late in the day. I've had a chance to review, the government knows the court has looked at this thoroughly. It has been thoroughly briefed by the defense. We are confident in the judgment of the court and we appreciate having had this chance to speak to these issues. Thank you.

THE COURT: All right.

MR. LORD: And if I may, Your Honor, I appreciate the time that you've given me, but my client just reminded me about something that I did seek to mention to the court, and that was that, you know, at the detention hearing and then as part of the presentence report there

were interviews done.  My client had a
psychological evaluation done in July of 2004.
He was seeing a marriage and family therapist at
a department of psychiatrist in Kaiser
Permanente in California.  Dr. Martin Williams
out in California came to a conclusion to a
reasonable degree of psychological certainty
that my client was not a risk to the victim or
to the public in this case, and both he and the
family therapist thought that he was low risk to
offend against the victim or anyone else in the
public and that those documents were made part
of the record as we went through this.

THE COURT: All right.  Thank you, Mr. Lord.
Would Mr. Garcia be able to approach at this
time or --

MR. LORD: Yes, Your Honor.

THE COURT: Please approach.  I meant that
physically could he approach.  Pursuant to the
Sentencing Reform Act of 1984, and cognizant of
the advisory nature of the United States
sentencing guidelines, it is the judgment of the
court that the defendant, Arthur Garcia, is
hereby committed to the custody of the Bureau of
Prisons to be imprisoned for a term of 83

months.  This term consists of 83 months on each of Counts 1 and 2, to be served concurrently.

The court recommends that the defendant be evaluated for participation in the sex offender program, sex offender treatment program at FCI Butner if he so qualified.  The court finds that the defendant has the ability to pay a fine below the applicable guideline range.

The defendant shall make restitution in the amount of $876 to Clara Stoner at the address set forth in the presentence report pursuant to Title 18 of the United States Code, Section 364(d)(5).  The defendant is further ordered to pay to the United States the sum of $1,200, consisting of a fine of $500 and a special assessment of $100 on each count.  The entire financial penalty is due in full immediately and shall be paid through the clerk of court.

Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years.  This term consists of five years on each of Counts 1 and 2, to be served concurrently.  Within 72 hours of release from the custody of the Bureau of Prisons the defendant shall report in person to the

probation office in the district to which the
defendant is released.

While on supervised release the defendant
shall comply with the standard conditions that
have been adopted by this court, and shall
comply with the following additional conditions.
First, the defendant shall have no contact with
Korena Stoner or any member of her family.
Second, the defendant shall participate in a sex
offender treatment program, which may include
risk assessment testing, counseling, and
therapeutic polygraph examinations, and shall
comply with all the requirements of the
treatment provider.

The defendant shall contribute to the cost
of the treatment in an amount to be determined
by the probation officer, and the treatment is
to be conducted by a therapist approved by the
probation officer. Third, the defendant shall
not associate with children under the age of 18
except in the presence of an adult who has been
approved by the probation officer. Fourth, as
directed by the probation officer the defendant
shall comply with the registration requirements
of the sex offender registration agency in any

state where he resides, he is employed, carries
on a vocation, or is a student.

Fifth, the defendant shall not use a
computer with any access to on-line computer
service without prior written approval of the
probation officer.  This includes any internet
service provider, bulletin board system, or any
other private or public computer network.  The
defendant shall also cooperate in the collection
of DNA as directed by the probation officer.

The court finds that the defendant poses a
low risk of future substance abuse and therefore
suspends the mandatory drug testing requirement.
The court recognizes that the defendant has
already served part of the term of imprisonment
imposed by this judgment.  He will not be
required to re-serve this period.  It is the
intent of the court that this judgment of
sentence relate back to the date of the original
judgment of sentence entered in January of 2006
and operate prospectively from that date.  Any
condition of the original judgment of sentence
that has been fully or partially satisfied by
the defendant shall be credited towards the
judgment of sentence imposed today.

With respect to the statement of reasons, after considering the arguments presented today and at the original sentencing hearing, and after considering those set forth in the defendant's resentencing memoranda, the court finds that an upward variance to the calculated guideline range is warranted in light of the purposes set forth in Title 18 of the United States Code, Section 3553(a), including the necessity of deterrence and just punishment, promotion of the respect for the law, protection of the public, avoidance of unwanted disparities, and assurance of correctional treatment for the defendant and restitution to any victims of the offense, and this sentence reflects this court's full consideration of all factors relevant to the sentencing determination, including, but not limited to, the nature and seriousness of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the advisory range and policies prescribed by the sentencing commission.

The court has determined that the calculated guideline range does not adequately

take into consideration the nature and
seriousness of the defendant's conduct, nor
does it provide a just punishment or an adequate
level of deterrence.  The extensive predator
conduct of the defendant and the extreme
influence that this educated married with four
children gentleman had on a -- strike that.  The
extensive predatory conduct of the defendant and
the extreme influence that an educated, married,
56-year-old man with four children had on a
14-year-old child warrants a sentence above the
guidelines range.

     Over the course of a few months the
defendant repeatedly instant messaged and
e-mailed the victim for purposes of encouraging
a sexual relationship.  These messages were
explicit and the internet contacts encompassed
thousands of pages.  The defendant knew his
conduct was criminal, even indicating to the
victim that their relationship could result in a
statutory maximum term of imprisonment of thirty
years and that as a result their relationship
must remain secret.

     I note that it is particularly troubling
that the defendant went to the victim's school

bus stop to entice her to go with him to a hotel and ultimately called the victim's school acting as her father to excuse absences. For control purposes the defendant gave the victim a cell phone to maintain private contact with her and he further enticed her with gifts of jewelry and cash.

As aptly described by the government, this grooming and cultivation of, this elaborate grooming and cultivation of the victim is a significant factor in the court's evaluation of seriousness of the offense and its resulting evaluation of an appropriate sentence. The court notes that it previously credited the information provided on victim impact during the previous sentencing hearing.

At the same time the court must be concerned with the history and characteristics of the defendant and the need for unwanted disparities. I have reviewed and taken into consideration defense counsel's lengthy memoranda concerning these issues. I also note that the government has chosen not to respond to the supplemental memoranda provided by defense counsel, although the court postponed this

proceeding in order to provide the government with ample opportunity to do so.

Although the court does not believe that this defendant is incorrigible or incapable of rehabilitation, the court notes that there is always a concern about recidivism, especially in cases of this nature, as well as the need to protect the public from any recurrence of dangerous predator conduct. Given all of the factors, the court has determined that a sentence of 83 months, a variance of twelve months above the upper end of the guideline range, is reasonable and not greater than necessary to achieve sentencing objectives.

Mr. Garcia, you can appeal your conviction if you believe that your plea was somehow unlawful or involuntary, or there was some other fundamental defect in the proceedings that was not waived by your plea. You also have a statutory right to appeal your sentence under certain circumstance, particularly if you think the sentence is contrary to law. With few exceptions any notice of appeal must be filed within ten days after sentence is imposed on you.

1     If you are unable to pay the cost of an

2   appeal you may apply for leave to appeal *in*

3   *forma pauperis*.  If you so request the clerk of

4   court will prepare and file a notice of appeal

5   on your behalf.  Mr. Lord, anything further on

6   behalf of your client?

7        MR. LORD: No, Your Honor.

8        THE COURT: Mr. Carlson, anything further?

9        MR. CARLSON: No, Your Honor.  Thank you.

10       THE COURT: Thank you very much.  We are

11   adjourned.  Good luck, Mr. Garcia.

12       (Hearing concluded at 2:25 p.m.)

USA vs. Arthur Garcia

1:04-CR-00301

Re-sentencing Hearing

7 September 2007

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the trial of the above case, and that this copy is a correct transcript of the same.

s/ Wesley J. Armstrong

_____

Wesley J. Armstrong

Registered Merit Reporter

The foregoing certification of this transcript does not apply to any reproduction by any means unless under the direct control and/or supervision of the certifying reporter.